Electronically Filed
Intermediate Court of Appeals
CAAP-18-0000012
21-FEB-2019
07:59 AM

NO. CAAP-18-0000012

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


STATE OF HAWAIʻI, Plaintiff-Appellee, v.
CALVIN BORGE, Defendant-Appellant


APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2PC131000847)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Reifurth and Chan, JJ.)

Defendant-Appellant Calvin Borge (**Borge**) appeals from the Judgment; Conviction and Sentence (**Judgment**) entered against him and in favor of Plaintiff-Appellee the State of Hawaiʻi (**State**) on January 4, 2018, in the Circuit Court of the Second Circuit (**Circuit Court**).[1]  Borge also challenges the Circuit Court's denial of his Motion to Dismiss Indictment for Failure to Present Clearly Exculpatory Evidence to the Grand Jury (**Motion to Dismiss**).

After a jury trial, Borge was convicted of Attempted Murder in the Second Degree, in violation of Hawaii Revised

_____

[1]    The Honorable Richard T. Bissen, Jr. presided.

Statutes (**HRS**) §§ 705-500(2) (2014),[2] 707-701.5 (2014),[3] and 706-656 (Supp. 2013).[4]

On appeal, Borge asserts two points of error, contending that: (1) the Circuit Court erred in denying Borge's Motion to Dismiss where the prosecutor had failed to present clearly exculpatory evidence to the grand jury; and (2) the

---

[2] HRS § 705-500 provides:

> **§ 705-500 Criminal attempt.** (1) A person is guilty of an attempt to commit a crime if the person:
> (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as the person believes them to be; or
> (b) Intentionally engages in conduct which, under the circumstances as the person believes them to be, constitutes a substantial step in a course of conduct intended to culminate in the person's commission of the crime.
> (2) When causing a particular result is an element of the crime, a person is guilty of an attempt to commit the crime if, acting with the state of mind required to establish liability with respect to the attendant circumstances specified in the definition of the crime, the person intentionally engages in conduct which is a substantial step in a course of conduct intended or known to cause such a result.
> (3) Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent.

[3] HRS § 707-701.5 provides, in relevant part:

> [**§ 707-701.5**] **Murder in the second degree.** (1) . . . [A] person commits the offense of murder in the second degree if the person intentionally or knowingly causes the death of another person.
> (2) Murder in the second degree is a felony for which the defendant shall be sentenced to imprisonment as provided in section 706-656.

[4] HRS § 706-656 provides, in relevant part:

> **§ 706-656 Terms of imprisonment for first and second degree murder and attempted first and second degree murder.**
> . . .
> (2) Except as provided in section 706-657, pertaining to enhanced sentence for second degree murder, persons convicted of second degree murder and attempted second degree murder shall be sentenced to life imprisonment with possibility of parole.

Circuit Court failed to conduct a "true colloquy" to validate Borge's purported waiver of his right to testify.

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised by the parties, we resolve Borge's points of error as follows:

(1) Borge asserts that the State's failure to present the grand jury with certain exculpatory evidence violated Borge's constitutional right to a fair and impartial grand jury proceeding. Specifically, Borge submits that, at the time of the grand jury proceedings, the prosecution had notice of evidence that the complainant Deanna Bolen (**Bolen**) had identified "a woman," and later identified more specifically Borge's girlfriend Kaleolani Keohuhu (**Keohuhu**), as her attacker and that Keohuhu had initially confessed to attacking Bolen, which constituted "clearly exculpatory" evidence that the prosecutor was required to present.

The Hawaiʻi Supreme Court has stated that the "'function of a grand jury to protect against unwarranted prosecution does not entail a duty to weigh the prosecution's case against that of the defense, or even to determine that the prosecution's case is supported by competent evidence.'" State v. Chong, 86 Hawaiʻi 282, 289, 949 P.2d 122, 129 (1997) (quoting, and expressly approving and adopting, State v. Bell, 60 Haw. 241, 256-57, 589 P.2d 517, 526 (1978) (Kidwell, J., concurring)).[5]

_____

[5] We note that Westlaw indicates that Chong overrules Bell, and a handful of cases seem to have noted this, but Chong overruled the Intermediate
(continued...)

The supreme court has rejected the requirement that a prosecutor must "put before the grand jury 'any and all evidence [that] might tend to exculpate the defendant,' or that would merely tend 'to negate guilt.'" State v. Wong, 97 Hawaiʻi 512, 526, 40 P.3d 914, 928 (2002) (quoting Bell, 60 Haw. at 243, 589 P.2d at 519). Instead, "a court should dismiss an indictment only when the prosecutor failed to present evidence that 'clearly would have negated guilt.'"[6] Id. (quoting Bell, 60 Haw. at 247, 589 P.2d at 521).

Exculpatory testimony, for instance, is not "clearly" exculpatory if it is directly contradicted by other evidence. See State v. O'Daniel, 62 Haw. 518, 522, 616 P.2d 1383, 1387 (1980) (concluding that testimony was not "clearly exculpatory" in light of the "contradictory circumstantial evidence which could support the charge"); Bell, 60 Haw. at 247, 589 P.2d at 521 ("Nash's testimony was not clearly exculpatory because one witness, Michael O'Connell, gave testimony which was directly contradictory to that of Nash.").

_____

[5](...continued)
Court of Appeals' (ICA) decision in the Chong case to the extent that the ICA contradicted the standard for dismissing an indictment under State v. Joao, 53 Haw. 226, 491 P.2d 1089 (1971), and as applied in Bell, in particular as Justice Kidwell explicated in his concurrence in Bell. See 86 Hawaiʻi at 282, 287-89, 949 P.2d at 122, 127-29. However, Chong did not alter the Bell standard for determining whether evidence is "clearly exculpatory."

[6]     The Bell court specified that:

> Clearly exculpatory evidence may be manifested, for example, by a witness whose testimony is not directly contradicted by any other witness and who maintains that the accused was nowhere near the scene of the crime when it occurred. Also, where it has become apparent to the prosecution, for example, that a sole eyewitness testifying as to the perpetration of the crime has perjured himself before the grand jury, that perjury must be revealed to the grand jury.

60 Haw. at 245, 589 P.2d at 520.

Moreover, the prosecution is not required "to produce before the grand jury all evidence which may tend to undermine the credibility of the witnesses presented." Bell, 60 Haw. at 253-54, 589 P.2d at 525 (citing Loraine v. United States, 396 F.2d 335, 339 (9th Cir. 1968)). Evidence of a victim's misidentification of the defendant, for example, is not clearly exculpatory, especially where the victim has otherwise positively identified the defendant. See id. at 253, 589 P.2d at 524 ("The victim's failure to identify [defendant] at the lineup is not clearly exculpatory, for the fact remains that the victim still positively identified [defendant] outside the police station."); State v. Pulawa, 62 Haw. 209, 215, 614 P.2d 373, 377 (1980) ("'[T]he grand jury need not be advised of all matters bearing upon the credibility of potential witnesses.'" (quoting United States v. Samango, 607 F.2d 877, 882 (9th Cir. 1979))).

Here, the evidence of Keohuhu's confession and arrest, as well as Bolen's initial statements regarding the attack, arguably tend to negate Borge's guilt. However, such evidence is not "clearly" exculpatory as it was directly contradicted by two eyewitnesses, Wade Waikiki and Bolen's boyfriend Regan Nitta, who observed Borge attack Bolen, and whose statements to police and subsequent testimony were consistent in this regard. Moreover, Keohuhu's confession was contradicted by her own recantation, as well as Bolen's positive identification of Borge to a grand jury.[7] Thus, while Bolen's initial statements that her attacker

---

[7] While during a second grand jury Bolen identified Borge by name as her attacker, during her testimony to the first grand jury, Bolen identified
(continued...)

was a female and, specifically, Keohuhu, may tend to undermine her credibility, such evidence is not clearly exculpatory in light of her subsequent positive identification of Borge as her attacker. See Bell, 60 Haw. at 253, 589 P.2d at 524. In sum, while the evidence tends to show Keohuhu, and not Borge, as Bolen's attacker is exculpatory, under the circumstances in this case, such evidence was not "clearly" exculpatory within the standard set forth by Bell and its progeny.[8] Accordingly, we conclude that the Circuit Court did not abuse its discretion in denying Borge's Motion to Dismiss.

(2) Borge argues that "the Circuit Court's ultimate Tachibana [colloquy] was fatally defective and failed to establish that Borge had waived his right to testify knowingly, intelligently and voluntarily." Specifically, Borge asserts that the Circuit Court "lumped the rights/advisements into a single extended litany," identical to the pre-trial advisory, thereby failing to establish that Borge properly understood each right individually in order to adequately waive them.

The supreme court has squarely held that "in order to protect the right to testify under the Hawai'i Constitution,

---

[7] (...continued)
her attacker only as "he," but did not specifically identify Borge. Later, at Borge's trial, Bolen testified that she did not know whether Keohuhu attacked her and she could not identify Borge in the courtroom.

[8]     Borge also contends that "a confession that is supported by the victim is significantly compelling" and that the grand jury could not have fairly or impartially acted without this evidence due to "the magnitude of the omission." However, this argument lacks merit, as "[s]uch conjecture as to the significance which the grand jury would have attached to testimony not presented to it would exceed [the appellate court]'s supervisory authority over the grand jury system." Bell, 60 Haw. at 248, 589 P.2d at 521 (citing Unites States v. Chanen, 549 F.2d 1306, 1313 (9th Cir. 1977); United States v. Mandel, 415 F. Supp. 1033, 1042 (D. Md. 1976)).

trial courts must advise criminal defendants of their right to testify and must obtain an on-the-record waiver of that right in every case in which the defendant does not testify." Tachibana v. State, 79 Hawai'i 226, 236, 900 P.2d 1293, 1303 (1995) (footnotes omitted). This directive includes two components for the trial court: (1) informing the defendant of fundamental principles pertaining to the right to testify and the right not to testify[9] and (2) engaging in a "true 'colloquy'" with the defendant, "consist[ing] of a verbal exchange between the judge and the defendant 'in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights.'" State v. Celestine, 142 Hawai'i 165, 170, 415 P.3d 907, 912 (2018) (quoting State v. Han, 130 Hawai'i 83, 90, 306 P.3d 128, 135 (2013)). The right to testify is violated when the trial court fails to satisfy the requirements of either component and thus provides no "'objective basis' for finding the defendant 'knowingly, intelligently, and voluntarily' relinquished his or her right to testify." Id. at 171, 415 P.3d at 913 (quoting Han, 130 Hawai'i at 91, 306 P.3d at 136).

---

[9] Specifically:

> that he [or she] has a right to testify, that if he [or she] wants to testify that no one can prevent him [or her] from doing so, and that if he [or she] testifies the prosecution will be allowed to cross-examine him [or her]. In connection with the privilege against self-incrimination, the defendant should also be advised that he [or she] has a right not to testify and that if he [or she] does not testify then the jury can be instructed about that right.

Tachibana, 79 Hawai'i at 236 n.7, 900 P.2d at 1303 n.7 (quoting State v Neuman, 371 S.E.2d 77, 82 (W. Va. 1988))

7

Most recently, in <u>Celestine</u>, the supreme court concluded that the following exchange was unsatisfactory as a <u>Tachibana</u> colloquy:

> THE COURT:  Okay. Miss Celestine, to advise you of your rights at trial, at some point in time the State will rest, okay, and you'll have an opportunity to testify or remain silent. Should you choose to remain silent, the Court can infer no guilt because of your silence. Basically, you'll be invoking your Fifth Amendment right against self-incrimination.
>
> Okay, you understand?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  However, if you do wish to testify, you need to be sworn in, you're also subject to cross-examination by the State's attorney. Okay?
>
> THE DEFENDANT:  Okay. And when the State does rest, okay, I'll remind you again, okay, I have to finish this even though we're doing this piece—piecemeal today. All right. Any questions? Okay. Thank you.
>
> . . . .
>
> THE COURT:  Okay. For defense case, okay, Miss Moss Celestine?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Okay. Just in caution, okay, I had explained to you, okay, on the 12th that you had the right to testify and the right to remain silent, okay. They call this your <u>Tachibana</u> rights. It's based on a case law that the appellate court found that the trial court needed to inform you of your rights, okay. If you chose not to testify, the Court could infer no guilt because of your silence; basically you would be invoking your Fifth Amendment right against self-incrimination. Okay. On the other hand, if you do wish to testify, you need to be sworn in, you also will be subject to cross-examination by the State's attorney.
>
> Okay. Your attorney just indicated to the Court that you will not be testifying. Is that correct?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Okay. Is anybody forcing you not to testify?
>
> THE DEFENDANT:  No, sir.
>
> THE COURT:  Okay. It's your own decision?

THE DEFENDANT: Yes, sir.

THE COURT: Okay, very good[.]

142 Hawai'i at 168-69, 415 P.3d at 910-11.

In so holding, the supreme court determined that the trial court "simply advised [the defendant] of her rights without any discussion or exchange to 'ascertain[] [her] understanding of the proceedings and of [her] rights.'" Id. at 171, 415 P.3d at 913. The court concluded that the defendant's responses "[did] not indicate" that she understood her constitutional rights and the trial court made no further inquiry "'into matters of constitutional magnitude.'" Id. at 172, 415 P.3d at 914 (quoting Han, 130 Hawai'i at 91, 306 P.3d at 136). The supreme court concluded that the trial court:

> thus did not engage in a sufficient verbal exchange with [the defendant] to ascertain whether her waiver of the right to testify was based on her understanding of the principles related by the district court. Because the court's colloquy with [the defendant] was deficient as to this essential requirement, the record does not demonstrate that [the defendant]'s waiver of the right to testify was knowingly, intelligently, and voluntarily made.

Id. (footnotes omitted).

Here, prior to trial, the Circuit Court conducted the following exchange with Borge:

> THE COURT: . . . I'd like you to know that you have a constitutional right to testify in your own defense. You should consult with your lawyer regarding the decision to testify, however, it is ultimately your decision and no one can prevent you from testifying should you choose to do so. If you decide to testify, the prosecutor will be allowed to cross-examine you.
> You also have a constitutional right not to testify and remain silent. If you choose not to testify, the jury will be instructed that it cannot hold your silence against you in deciding your case.
> If you have not testified by the end of this trial, I will question you to ensure that it was your decision not to testify.

> Do you have any questions about what I've
> just explained to you?
> [Borge]: No.
> THE COURT: Very good.

(Emphasis added).

Prior to deliberations, the Circuit Court again addressed Borge:

> THE COURT: . . . As I discussed with you before the start of the trial, you have a constitutional right to testify in your own defense. Although you should consult with your lawyer regarding the decision to testify, it is your decision, and no one can prevent you from testifying should you choose to do so. If you decide to testify, the prosecutor will be allowed to cross-examine you.
> You also have a constitutional right not no testify and to remain silent. If you choose not to testify, the jury will be instructed that it cannot hold your silence against you in deciding your case. It is the understanding of the Court that you do not intend to testify. Is that correct?
> [Borge]: That's correct.
> THE COURT: And is it your decision not to testify?
> THE DEFENDANT: Yes, it is.
> THE COURT: All right.

(Emphasis added).

Although the Circuit Court sufficiently advised Borge of his rights related to testifying, it did not engage in a sufficiently "true colloquy" as required under Tachibana and as most recently set forth in Celestine. In its pre-trial advisement, the Circuit Court asked whether Borge had any "questions" regarding the advisement but it did not conduct any verbal exchange to "ascertain[] [Borge]'s understanding of the proceedings and of [his] rights." Celestine, 142 Hawai'i at 171, 415 P.3d at 913. Moreover, following the Circuit Court's ultimate colloquy, it made no attempt to obtain an acknowledgment from Borge that he truly understood those rights before merely reciting back to Borge its understanding that he had decided

against testifying. Although the Circuit Court appropriately sought to ensure that Borge had made the decision independently, the decision cannot be characterized as knowing or intelligent where the Circuit Court did not determine on the record that Borge understood what he was deciding against or that he was basing his decision on that understanding. Thus, a review of the Circuit Court's interactions with Borge establishes that the Circuit Court did not provide an "objective basis" for finding that Borge knowingly, intelligently, and voluntarily relinquished his right to testify. See id.

Because the Tachibana colloquy was deficient, we review for harmless error. Id. at 173, 415 P.3d at 915. As this court has recognized, "it is inherently difficult, if not impossible, to divine what effect a violation of the defendant's constitutional right to testify had on the outcome of any particular case." State v. Hoang, 94 Hawai'i 271, 279, 12 P.3d 371, 379 (App. 2000) (citing State v. Silva, 78 Hawai'i 115, 126, 890 P.2d 702, 713 (App. 1995)). Moreover, in cases where the "decisive issue" is credibility, it is particularly difficult to conclude that the defendant's testimony could not possibly have created a reasonable doubt in the mind of the factfinder as to the defendant's guilt. See, e.g., id.; Han, 130 Hawai'i at 94-95, 306 P.3d at 139-40.

Here, where, *inter alia*, there was no physical evidence as to the identity of Bolen's attacker, Borge introduced evidence indicating that Keohuhu was the perpetrator, and where the complainant was unable to identify Borge at the trial as her

11

assailant, the credibility of the State's witnesses was the "decisive issue" at trial. As Borge argues, his testimony "could have shifted the balance of the jury's assessment of credibility" and thus it is "'impossible to conclude beyond a reasonable doubt,'" that Borge's testimony "'could not have created a reasonable doubt in the mind of the factfinder and, hence, that the error could not have contributed to the conviction.'" Han, 130 Hawai'i at 95, 306 P.3d at 140 (quoting Tachibana, 79 Hawai'i at 240, 900 P.2d at 1307). Accordingly, we conclude that the Circuit Court's error in failing to obtain a valid waiver of Borge's right to testify was not harmless.

For these reasons, the Circuit Court's January 4, 2018 Judgment is vacated and this case is remanded for a new trial.

DATED: Honolulu, Hawai'i, February 21, 2019.

On the briefs:

Alen M. Kaneshiro,
    and
Michael Jay Green,
for Defendant-Appellant.

Richard K. Minatoya,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

Presiding Judge

Associate Judge

Associate Judge